**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JERMC LTD, et al.,

     Plaintiffs,

v.                                Case No. 8:19-cv-688-T-60AAS

TOWN OF REDINGTON
SHORES, et al.,

     Defendants.

_____/

## ORDER GRANTING (IN PART) AND DENYING (IN PART) DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on twelve motions to dismiss:

(1)    "Defendant Town of Redington Shores' Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 46);

(2)    "Defendant James Denhardt's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 65);

(3)    "Defendant Pat Drumm's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 66);

(4)    "Defendant Marybeth Henderson's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 67);

(5)    "Defendant Lee Holmes's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 68);

(6)     "Defendant Jeff Neal's Dispositive Motion to Dismiss
        First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 69);

(7)     "Defendant Michael Robinson's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 70);

(8)     "Defendant Bert Adams's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 71);

(9)     "Defendant Steve Andrews's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 72);

(10)    "Defendant Tom Kapper's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 73);

(11)    "Defendant Mary Palmer's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 74); and

(12)    "Defendant Joseph Walker's Dispositive Motion to
        Dismiss First Amended Complaint and Incorporated
        Memorandum of Law" (Doc. 75).

Plaintiffs JERMC LTD., JERMC Management, Corp. Nashaat Antonious, and

Soheir Antonious filed responses in opposition. (Docs. 59, 62). The Court held a

hearing to address this matter on April 3, 2020. (Doc. 83). At the Court's direction,

Defendants filed a notice of supplemental authority. (Doc. 84). After reviewing the

motions, responses, legal arguments, court file, and the record, the Court finds as

follows:

## Factual Background

Plaintiffs are various entities and persons associated with the premises known as the Redington Long Pier ("Pier").[1]  Defendant Town of Redington Shores ("Redington Shores") is a municipal corporation located in Pinellas County, and the individual Defendants are all former or current employees of Redington Shores. According to Plaintiffs, Defendants have "engaged in a conspiracy, pattern and practice to emotionally and financially injured the Plaintiffs, whereby they have maliciously engaged in: violations of the Sunshine Law, unlawful and selective code enforcement, extortion of permit fees, pursuance of bad faith litigation for personal and pecuniary gain, conspiracy to commit an unlawful taking of the Plaintiffs' properties, interference with Plaintiffs' contractual and business relationships, willful and wanton violation of the Plaintiffs' constitutional rights, harassment and intimidation of the Plaintiffs', defamation, and abuse of power."  (Doc. 6 at ¶ 29).

The 14-count amended complaint consists of over 300 paragraphs – including 160 paragraphs in the factual allegations section – and the events described span from the alleged 2005 interference with the sale of the pier, to a more recent incident in 2018 involving a hotdog vendor. It is clear to the Court that these parties have a long and complicated history.

---

[1] According to the allegations of the amended complaint, JERMC LTD. owns the premises, while JERMC Management manages and operates the Pier.  JERMC Management is the general partner of JERMC LTD., with ownership interests.  Nashaat and Soheir Antonious are both limited partners of JERMC LTD., with ownership interests.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  "Although Rule 8(a) does not require 'detailed factual allegations,' it does require 'more than labels and conclusions'; a 'formulaic recitation of the cause of action will not do.'"  *Young v. Lexington Ins. Co.*, No. 18-62468, 2018 WL 7572240, at *1 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, No. 18-62468-CIV, 2019 WL 1112274 (S.D. Fla. Jan. 9, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 555.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## Analysis

### Count I (Tortious Interference with the Contract for the Sale of the Pier in 2018)

In Count I, Plaintiffs allege that Denhardt, Palmer, Andrews, Walker, Henderson, and Kapper had knowledge of a contract for the sale of the pier in 2018 and made false statements and misrepresentations to the potential buyers.  *See*

(Doc. 6 at ¶ 190-95).  Plaintiffs allege that these false statements resulted in the rescission of the contract by the buyers.  *See* (*Id*. at ¶ 198).  In their motions to dismiss, Defendants argue that Plaintiffs have failed to sufficiently plead a tortious interference claim related to the sale of the pier in 2018 because they have failed to allege the existence of a contract.

"The elements of tortious interference with a contract or with a business relationship are: (1) the existence of either a contract or a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff." *Dick's Sporting Goods, Inc. v. Forbes/Cohen Florida Props., L.P.*, No. 9:20-CV-80157-ROSENBERG/REINHART, 2020 WL 1536443, at *3 (S.D. Fla. Mar. 30, 2020) (citing *Seminole Tribe of Fla. v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001)).

At the April 3, 2020, hearing, the Court orally denied the motions to dismiss as to Count I after finding that Plaintiffs sufficiently alleged the existence of a contract in paragraph 190 of the amended complaint.  Defendants' argument on this point was unnecessary.[2]

---

[2] The amended complaint clearly states that "[o]n March 6, 2018, Plaintiffs and the 2018 Pier Buyers mutually executed <u>a contract</u> for the purchase of the Pier."  (Doc. 6 at ¶ 190) (emphasis added by the Court).

### *Count II (Tortious Interference with the Contract for the Sale of the Pier in 2005)*

In Count II, Plaintiffs assert a tortious interference claim related to the sale of the pier in 2005.  Plaintiffs allege that Defendants Denhardt, Palmer, Adams, Holmes, and Andrews made several false statements to the potential buyers of the Pier in 2005, including that Redington Shores had previously disapproved rezoning plans submitted with respect to the Pier, and that the State of Florida would not approve a change in zoning from "recreation" to "hotel/condo."  As a result of these statements, Plaintiffs allege that the buyers rescinded their contract to purchase the pier.  Defendants argue that this tortious interference claim is barred by the four-year statute of limitations because the action accrued on or about February 27, 2005, when the last element constituting the cause of action occurred.  Defendants further argue that the delayed discovery doctrine does not apply to intentional torts such as tortious interference with a contract.  Plaintiffs generally argue in opposition that because the alleged conduct has been "continuous," the claim is not barred by the statute of limitations.

To state a claim for tortious interference, Plaintiffs must allege: "(1) the existence of either a contract or a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff."  *Dick's Sporting Goods, Inc.*, 2020 WL 1536443, at *3.  In Florida, a tortious interference claim has a four-year statute of limitations.  A cause of action accrues when "the last element constituting

the cause of action occurs." § 95.011, *F.S.*  Although Florida law recognizes the doctrine of delayed discovery, Florida courts have expressly held that "this doctrine does not apply to claims of tortious interference." *King v. Bencie*, No. 19-11503, 2020 WL 1550916, at *1 (11th Cir. Apr. 1, 2020); *Yusuf Mohamad Excavation, Inc.*, 793 So. 2d 1127, 1128 (Fla. 5th DCA 2001) (holding that delayed discovery doctrine does not apply to tortious interference claims).

Upon review, the Court finds that this claim is barred by the statute of limitations.  From the face of the amended complaint, it is clear that the last element of this tortious interference claim occurred when the buyers rescinded the contract and Plaintiffs suffered damages in 2005.  *See* § 95.11(3)(o), *F.S.*  Even if Plaintiffs only learned of the cause of the rescission in June 2018, the delayed discovery doctrine is inapplicable to tortious interference claims.  Moreover, Plaintiffs' argument that the continuing tort doctrine operates to revive their claim is not well taken where the last act of tortious interference related to the sale of the pier in 2005 occurred in 2005.  *See TaiDoc Tech. Corp. v. Pharma Supply, Inc.,* No. 13-80682-CIV-RYSKAMP/HOPKINS, 2014 WL 12861849, at *5 (S.D. Fla. Apr. 9, 2014).  Although new events happened between these parties since then, those occurrences were not related to the 2005 sale of the pier.  Consequently, Count II of Plaintiffs' amended complaint is dismissed with prejudice.

### *Counts III and IV (Violation of the Sunshine Law § 286.011 in 2018 and 2005)*

In Counts III and IV, Plaintiffs allege that Defendants Henderson, Kapper, Neal, Drumm, and Robinson violated the Sunshine Law by making decisions

outside of public meetings.  Defendants generally argue that the counts are conclusory and legally insufficient.  Defendants further argue that § 286.011, *F.S.* does not provide for a cause of action seeking monetary damages.

Plaintiffs appear to only seek monetary damages.  However, it is clear that they may not recover monetary damages for any alleged violations of the Sunshine Law, which only provides "a penal violation for which the penalty is a fine or imprisonment."  *See Sinclair v. Town of Yankeetown*, No. 1:07-cv-035-SPM, 2008 WL 660089, at *4 (N.D. Fla. Mar. 7, 2008).  "[T]here is no private action against individual defendants or the municipality for any monetary damages."  *Id*. Consequently, Counts III and IV do not state a claim upon which relief may be granted and must be dismissed.  To the extent that Plaintiffs may seek non-monetary relief, the Court will permit them the opportunity to amend and refile these claims, if they may do so in good faith.

### Counts V and VI (Violation of 42 U.S.C. § 1983 Constitutional Right to Substantive and Procedural Due Process Under the 14th Amendment Against All Individual Defendants and Redington Shores)

In Counts V and VI, Plaintiffs allege that Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Henderson, and Kapper unlawfully "colluded, conspired, and abused their power to relay rejections to Plaintiffs' buyers regarding any zoning change proposals before they even submitted a formal application or a public hearing was held," which "deprived Plaintiffs of any meaningful opportunity of substantive and procedural due process with respect to the consideration of any zoning change proposed by their prospective buyers."  *See* (Doc. 6 at ¶¶ 229-230).

The individual Defendants argue that Count V should be dismissed because it is barred by the statute of limitations, and because they are entitled to qualified immunity.  Redington Shores argues that Count VI should be dismissed because it fails to state a claim for relief.

Upon review, the Court finds that this count constitutes an improper shotgun pleading because it contains claims related to both substantive due process and procedural due process.  *See Clewiston Commons, LLC v. City of Clewiston*, No. 2:18-cv-339-FtM-38MRM, 2019 WL 2515830, at *2 (M.D. Fla. June 18, 2019) (finding count constituted shotgun pleading and directing plaintiff to file separate claims for alleged substantive due process violation and procedural due process violation); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (distinguishing between substantive due process and procedural due process claims); *Arenal v. City of Punta Gorda, Fla.*, 932 F. Supp. 1406, 1413 (M.D. Fla. 1996) (explaining that substantive and procedural due process are separate and distinct causes of action).  If Plaintiffs intend to pursue § 1983 claims based on both substantive due process and procedural due process violations, they are directed to file these claims as separate counts in their second amended complaint.

Furthermore, Plaintiffs have failed to sufficiently plead their substantive due process and procedural due process claims.  With regard to their substantive due process claim, Plaintiffs do not specifically identify the constitutional right at issue, and they do not allege that Defendants' actions violated clearly-established law.  To the extent that Plaintiffs are alleging a violation of land-use rights, the Court notes

that such rights are state-created and generally may not support a substantive due process claim.  *See Lewis v. Brown*, 409 F.3d 1271, 1272-74 (11th Cir. 2005).

With regard to their procedural due process claim, Plaintiffs only allege state action; they do not allege the deprivation of a constitutionally protected interest or constitutionally inadequate process.  Additionally, in order to sufficiently allege a procedural due process claim, a plaintiff must allege that no adequate state remedies are available.  *See, e.g., Clewiston Commons, LLC*, 2019 WL 6614220, at *2.  Based on the allegations of the amended complaint, it is unclear whether Plaintiffs could make the necessary allegations since it appears that they never actually pursued state remedies.  *See id.* (explaining that "[i]f a plaintiff fails to avail itself of adequate state remedies, that plaintiff cannot rely on that failure to claim that the state deprived [it] of procedural due process").  In an abundance of caution, the Court will allow Plaintiffs to amend their complaint and replead these claims, if they may do so in good faith.

### *Count VII (Conspiracy to Commit a Taking in Violation of the 5th Amendment)*

In Count VII, Plaintiffs allege that Defendants Denhardt, Palmer, Andrews, Walker, Henderson, and Kapper conspired to pursue a "taking" of Plaintiffs' property by executing a land use amendment, which sought to lower the maximum density for developable units on the Pier.  Plaintiffs allege that in furtherance of this "conspiracy," these Defendants made intentional misstatements to the 2018 pier buyers, stating that the maximum density allowable was fifteen units per acre even though the current maximum density was twenty-five units per acre.

Defendants contend that "conspiracy to commit a taking" does not constitute a cause of action.

Upon review, the Court finds that Plaintiffs have failed to and cannot state a cognizable claim for relief in Count VII.  *See Coles v. Board of Park Commr's*, No. 3:08CV2968, 2009 WL 2922036, at *1 (N.D. Ohio Sept. 8, 2009) (holding that because plaintiffs cannot assert a claim for violation of the Takings Clause against an individual defendant, there is no cognizable cause of action under § 1983 for conspiracy to violate the Takings Clause).  Consequently, Count VII is dismissed with prejudice.

### Counts VIII and IX (Violation of 42 U.S.C. § 1983 Civil Right to Equal Protection Clause – Unlawful and Selective Code Enforcement Against All Individual Defendants and Redington Shores)

In Counts VIII and IX, Plaintiffs allege that Defendants violated their equal protection rights through selective code enforcement.  Defendants argue that Plaintiffs have failed to sufficiently allege an equal protection claim related to selective code enforcement.

Governmental entities are required to treat similarly situated people alike under the Equal Protection Clause.  *See, e.g., Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313-14 (11th Cir. 2006). Although typical equal protection claims are based on membership in a vulnerable group, courts including the Eleventh Circuit do not limit equal protection claims to only this type of discrimination and have also recognized an individual's right to be free from intentional discrimination by government officials.  *See, e.g., id (citing E&T Realty v. Strickland*, 830 F.2d 1107,

1112 (11th Cir. 1987)). To sustain an equal protection claim based on selective enforcement, a plaintiff must plead and prove that: (1) the plaintiff was treated differently from other similarly-situated individuals, and (2) the governmental entities unequally applied a facially neutral ordinance for the purpose of discriminating against them. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).

To prevail on an equal protection claim based on a "class of one" theory, a plaintiff must show that the plaintiff was treated differently from similarly situated individuals, and that there is no rational basis for the difference in treatment. *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam). This generally requires a plaintiff to identify a comparator to demonstrate discriminatory conduct. *See Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1340 (S.D. Fla. 2014) (citations omitted). The Eleventh Circuit has emphasized that a plaintiff may not merely rely on "broad generalities in identifying a comparator." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009); *see also Apothecary Dev. Corp. v. City of Marco Island, Florida*, 517 F. App'x 890, 892 (11th Cir. 2012).

The Seventh Circuit has developed an exception to the general comparator requirement and "recognizes class of one claims in cases where illegitimate governmental conduct or animus is easily demonstrated[,] but similarly situated individuals are difficult to find." *Eisenberg*, 1 F. Supp. 3d at 1340 (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)). This exception is applicable

only "[i]f animus is readily obvious" based on treatment of the plaintiffs. *Id.* It does not appear that the Eleventh Circuit has addressed this particular issue, but even assuming the Eleventh Circuit would recognize a class of one claim without the identification of a similarly situated comparator, the Seventh Circuit standard based on animus is a challenging standard to meet. *Id.* at 1341-42.

The Court finds that Plaintiffs have failed to state a "class of one" equal protection claim. Plaintiffs failed to allege the existence of at least one similarly situated comparator "and only generally allege[d] the treatment received by Plaintiffs was different from that of others similarly situated." *See id.* at 1342. Furthermore, Plaintiffs have not pleaded "such obviously harassing or malicious conduct on the City's part so that unequal treatment may be inferred." *See id.* As such, Counts VIII and IX are dismissed without prejudice.

### Count X (Malicious Prosecution of Code Enforcement Against Plaintiffs)

In Count X, Plaintiffs allege that Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Henderson, and Kapper maliciously prosecuted a two-year code enforcement case against them that was contrary to the law. Defendants contend that Plaintiffs have failed to state a claim upon which relief may be granted.

Initially, the Court notes that it is unclear whether Plaintiffs are pursuing this claim under state law (based on the common law tort of malicious prosecution), or under federal law (based on an alleged § 1983 violation). For this reason alone, Count X is subject to dismissal as a shotgun pleading. Additionally, Plaintiffs fail to allege each of the elements of a malicious prosecution claim. *See Hoelper v. Coats*,

No. 8:10-cv-1324-T-17EAJ, 2011 WL 5525350, at *5 (M.D. Fla. Nov. 14, 2011).  The

factual allegations are conclusory and fail to provide sufficient detail to support

their claim.  In their second amended complaint, Plaintiffs are directed to include

additional information about the underlying action(s), including any case names

and numbers upon which they seek to base their malicious prosecution claim.

### Count XI (Tortious Interference with Sale of Nashaat and Soheir Antonious's Residential Property)

In Count XI, Plaintiffs assert a tortious interference claim against Denhardt

and Palmer in relation to the sale of the Antoniouses' residential property in 2016.

Defendants argue that Plaintiffs have failed to sufficiently allege a claim because

they fail to allege the existence of a contract for sale.

As the Court has previously explained, a tortious interference claim consists

of the following elements: "(1) the existence of either a contract or a business

relationship between the plaintiff and a third party, (2) the defendant's knowledge

of the contract or business relationship, (3) the defendant's intentional and

unjustified interference with the contract or business relationship, and (4) damage

to the plaintiff."  *Dick's Sporting Goods, Inc.*, 2020 WL 1536443, at *3.

Upon review, the Court finds that Plaintiffs have sufficiently alleged a

tortious interference claim related to the sale of the Antoniouses' residential

property.  The Court notes that although Defendants argue that there was no

contract, Plaintiffs allege that they were involved in negotiations and a contract for

the sale of the property existed.  *See* (Doc. 6 at ¶¶ 271-73, 279).  For the purpose of

ruling on the motions to dismiss, the Court accepts these allegations as true.

Consequently, the motions to dismiss are denied as to Count XI.

### Count XII (Tortious Interference with Plaintiffs' Advantageous Business Relationship with Hot-Dog Vendor)

In Count XII, Plaintiffs allege that Denhardt, Henderson, Kapper and Palmer were aware of a business arrangement and/or contract between Plaintiffs and a hotdog vendor regarding hotdog sales on the Pier, but nonetheless "compelled" law enforcement officers to forcibly remove the vendor under threat of arrest. Additionally, Plaintiffs allege that Palmer made false statements to the hotdog vendor to intimidate him into ending his business relationship with Plaintiffs. As a result, Plaintiffs allege that the vendor rescinded his agreement with Plaintiffs.

Upon review, the Court finds that Plaintiffs have sufficiently alleged a tortious interference claim related to the hotdog vendor. As such, the motions to dismiss are denied as to Count XII.

### Count XIII (Civil Conspiracy to Emotionally and Financially Injure the Plaintiffs)

In Count XIII, Plaintiffs generally allege that Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Henderson, and Kapper engaged in a civil conspiracy against Plaintiffs from 2000-2018 by committing a wide array of unlawful conduct, including: "unlawful and selective code enforcement, extortion of permit fees, pursuance of bad faith litigation for personal and pecuniary gain, conspiracy to commit an unlawful taking of the Plaintiffs property, interference with Plaintiffs' contractual and business relationships, willful and wanton violation of Plaintiffs'

constitutional rights, harassment and intimation of the Plaintiffs, defamation, abuse of power, and the pursuance of a plot of emotionally and financially injuring the Plaintiffs." (Doc. 6 at ¶ 291-97).  Defendants generally argue that Plaintiffs have failed to state a claim upon which relief may be granted by failing to allege the elements of a civil conspiracy claim.  Defendants further argue that all claims predicated upon a conspiracy must be dismissed because they are barred by the intracorporate conspiracy doctrine.

"Under Florida law, the elements of civil conspiracy are: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1324-25 (M.D. Fla. 2016) (quoting *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009)). However, pursuant to the intracorporate conspiracy doctrine, "a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers." *Id*.  This doctrine applies to public entities, such as Redington Shores and its employees.  *See Tillman v. Orange County, Fla.*, 519 F. App'x 632, 636 (11th Cir. 2013).

Upon review, the Court finds that Plaintiffs' civil conspiracy claim is facially insufficient as pleaded because the only members of the alleged conspiracy are the employees of Redington Shores and the subject of the alleged conspiracy involves job-related functions within the scope of employment of Defendants (namely code

enforcement and zoning decisions).  As such, Count XIII is dismissed without prejudice.

### Count XIV (Intentional Infliction of Emotional Distress on Nashaat and Soheir Antonious)

In Count XIV, Plaintiffs allege that Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Henderson, and Kapper engaged in unlawful conduct with the intention of causing them emotional distress, including "unlawful and selective code enforcement, extortion of permit fees, pursuance of bad faith litigation for personal and pecuniary gain, conspiracy to commit an unlawful taking of the Antoniouses' property, interference with Plaintiffs' contractual and business relationships, willful and wanton violation of [the] Antoniouses' constitutional rights, harassment and intimidation of the Antoniouses, defamation, abuse of power, and the pursuance of a plot of emotionally and financially injuring the Antoniouses."  *See* (Doc. 6 at ¶ 299-300).

To sufficiently plead a claim for intentional infliction of emotional distress, a plaintiff must set forth facts that establish: (1) the defendant's conduct was intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe.  *See King v. State of Florida*, 650 F. Supp. 2d 1157, 1167 (N.D. Fla. 2009).  Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *See id.* (quoting *Ford Motor Credit Co. v. Sheehan*, 373 So. 2d 956, 959 (Fla. 1st DCA

1979)).  "The standard for outrageous conduct is particularly high in Florida."

*Patterson v. Downtown Med. & Diagnostic Ctr.*, 866 F. Supp. 1379, 1383 (M.D. Fla.

1994).  "[W]hether a person's conduct is sufficiently outrageous and intolerable as to

form the basis for a claim of intentional infliction of emotional distress is a *matter of*

*law for the court*, not a question of fact."  *Debose v. Univ. of South Florida*, 178 F.

Supp. 3d 1258, 1273 (M.D. Fla. 2016) (quoting *Griffin v. Polk Cty. Sheriff's Office*,

No. 8:09-cv-960-T-33MAP, 2009 WL 5171754, at *2 (M.D. Fla. Dec. 23, 2009))

(emphasis in original).

Even assuming the allegations of the amended complaint are true, the acts

and conduct alleged do not rise to the necessary level of outrageousness to state a

claim for intentional infliction of emotional distress.  *See Thomas v. City of Palm*

*Coast*, No. 3:14-cv-172-J-32PDB, 2015 WL 7429051, at *4 (M.D. Fla. Nov. 23, 2015)

("Maliciously issuing repeated code enforcement violations against a property is not

sufficiently outrageous to form a claim for intentional infliction of emotional

distress."); *Callaway v. Hernandez*, No. 2:07-cv-132-FtM-29SPC, 2010 WL 1249936,

at *10 (M.D. Fla. Mar. 25, 2010) (holding that even if the conduct at issue –

maliciously issuing repeated code enforcement violations against the property – was

an attempt to put plaintiff out of business, it still would not rise to the requisite

level of outrageousness).  In this case, although the misconduct may be considered

"unprofessional, objectionable, and even cruel," it cannot be considered "outrageous"

as a matter of law.  *See King*, 650 F. Supp. 2d at 1167.  As such, Count XIV is

dismissed with prejudice.

## Conclusion

For the reasons discussed above, the Court grants in part, and denies in part, the motions to dismiss. The motions are denied as to Counts I, XI, and XII. The motions are granted to the extent that Counts II, VII and XIV are denied with prejudice. Counts III, IV, V, VI, VIII, IX, X, and XIII are dismissed without prejudice, with leave to amend. Plaintiffs are directed to file a second amended complaint correcting the aforementioned deficiencies within the timeframe specified below. In their second amended complaint, Plaintiffs are specifically directed to – as part of each count – clearly allege which of the Defendants the claim is against, and if the Defendant is an individual, whether the claim is against that Defendant in his or her official or individual capacity.[3]

In light of the voluminous and lengthy filings, and for the sake of clarity, both parties are strongly encouraged to simplify the issues before the Court in their future filings; for instance, by filing a streamlined second amended complaint, or joint defense motions where possible instead of twelve individual motions with identical or substantially similar legal arguments.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  "Defendant Town of Redington Shores' Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**;

---

[3] For example, "Count XII – Tortious Interference with Plaintiffs' Advantageous Business Relationship with Hot-Dog Vendor – Against Defendants Denhardt, Henderson, Kapper, and Palmer in their Individual Capacities."

(2)    "Defendant James Denhardt's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 65) is **GRANTED IN PART** and **DENIED IN PART**;

(3)    "Defendant Pat Drumm's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 66) is **GRANTED IN PART** and **DENIED IN PART**;

(4)    "Defendant Marybeth Henderson's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 67) is **GRANTED IN PART** and **DENIED IN PART**;

(5)    "Defendant Lee Holmes's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART**;

(6)    "Defendant Jeff Neal's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 69) is **GRANTED IN PART** and **DENIED IN PART**;

(7)    "Defendant Michael Robinson's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART**;

(8)    "Defendant Bert Adams's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 71) is **GRANTED IN PART** and **DENIED IN PART**;

(9)    "Defendant Steve Andrews's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 72) is **GRANTED IN PART** and **DENIED IN PART**;

(10)    "Defendant Tom Kapper's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 73) is **GRANTED IN PART** and **DENIED IN PART**;

(11)    "Defendant Mary Palmer's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 74) is **GRANTED IN PART** and **DENIED IN PART**;

(12)    "Defendant Joseph Walker's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 75) is **GRANTED IN PART** and **DENIED IN PART**;

(13)    The motions to dismiss are **DENIED** as to Counts I, XI, and XII.

(14)    The motions to dismiss are **GRANTED** to the extent that Counts II, VII and XIV of the amended complaint are **DENIED WITH PREJUDICE**.

(15)    The motions to dismiss are **GRANTED** to the extent that Counts III, IV, V, VI, VIII, IX, X, and XIII of the amended complaint are **DISMISSED WITHOUT PREJUDICE**, with leave to amend. Plaintiffs are directed to file their second amended complaint on or before May 26, 2020.  Failure to file a second amended complaint as directed shall result in the dismissal of this action without prejudice without further notice.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>24th</u> day of April, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**