UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERMC LTD, et al.,

    Plaintiffs,

v.                                                    Case No. 8:19-cv-688-T-60AAS

TOWN OF REDINGTON
SHORES, et al.,

    Defendants.
_____/

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTIONS TO DISMISS; and**

**ORDER DENYING IN PART, AND DISMISSING IN PART, DEFENDANTS' MOTIONS FOR SANCTIONS**

    This matter is before the Court on several motions:

    (1)    "Town of Redington Shores' Dispositive Motion to Dismiss Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law" (Doc. 92);

    (2)    "Defendant James Denhardt's Dispositive Motion to Dismiss the Second Amended Complaint and Motion to Dismiss-Motion for Summary Judgment as to Counts V and VII and Incorporated Memorandum of Law" (Doc. 94);

    (3)    "Defendants Bertram Adams, Steven Andrews, Marybeth Henderson, Leland Holmes, Thomas Kapper, Mary Palmer, and Joseph Walker's Dispositive Motion to Dismiss the Second Amended Complaint and Motion to Dismiss-Motion for Summary Judgment as to Counts V and VII and Incorporated Memorandum of Law" (Doc. 95);

(4) "Town of Redington Shores' Motion for Sanctions" (Doc. 137);

(5) "Defendant James Denhardt's Motion for Sanctions" (Doc. 138);

(6) "Defendants Henderson, Neal, Robinson, and Drumm's Motion for Sanctions as to Count II" (Doc. 139); and

(7) "Defendants Adams, Andrews, Henderson, Holmes, Walker, Palmer, and Kapper's Motion for Sanctions" (Doc. 140).

The Court held a hearing to address the motions to dismiss on June 10, 2020. (Doc. 110). Due to the nature of the qualified immunity and sovereign immunity arguments raised by Defendants, in an abundance of caution, the Court converted the motions to dismiss (Docs. 92; 94; and 95) into motions for summary judgment and gave the parties the opportunity to submit supplemental responses, including evidence. (Doc. 109). On June 20, 2020, Plaintiffs filed their responses in opposition to the motions. (Docs. 117; 118; 119). On June 26, 2020, Defendants filed their replies. (Docs. 131; 132; 134). After reviewing the motions, responses, replies, court file, and the record, the Court finds as follows:

## **Factual Background**

Plaintiffs are various entities and persons associated with the premises known as the Redington Long Pier ("Pier").[1] Defendant Town of Redington Shores ("Town" or "Redington Shores") is a municipal corporation located in Pinellas

---

[1] According to the allegations of the amended complaint, JERMC LTD. owns the premises, while JERMC Management manages and operates the Pier. JERMC Management is the general partner of JERMC LTD., with ownership interests. Nashaat and Soheir Antonious are both limited partners of JERMC LTD., with ownership interests.

County, and the individual Defendants are all former or current employees of Redington Shores. According to Plaintiffs, Defendants have "engaged in a conspiracy, pattern and practice to emotionally and financially injure the Plaintiffs, whereby they have maliciously engaged in: violations of the Sunshine Law, unlawful and selective code enforcement, extortion of permit fees, pursuance of bad faith litigation for personal and pecuniary gain, conspiracy to commit an unlawful taking of the Plaintiffs' properties, interference with Plaintiffs' contractual and business relationships, willful and wanton violation of the Plaintiffs' constitutional rights, harassment and intimidation of the Plaintiffs', defamation, and abuse of power." (Doc. 6 at ¶ 29).

The initial complaint, which was filed in state court on February 16, 2019, consisted of 286 paragraphs and 13 separate causes of action. (Doc. 1-1). After the case was removed, Plaintiffs filed an amended complaint.

The 14-count first amended complaint, filed on March 25, 2019, consisted of over 300 paragraphs – including 160 paragraphs in the factual allegations section. (Doc. 6). The events described spanned from the alleged 2005 interference with the sale of the pier, to a more recent incident in 2018 involving a hotdog vendor. This complaint was dismissed by the Court for numerous pleading deficiencies, with leave to amend. (Doc. 85).

The 9-count second amended complaint, filed on May 12, 2020, consists of over 300 paragraphs – including 173 paragraphs in the factual allegations section.

(Doc. 88). It remains clear to the Court that these parties have a long and complicated history.[2]

## Analysis

### *Count V – Malicious Prosecution – Violation of 42 U.S.C. § 1983 Pursuant to the Fourth Amendment: Unreasonable Seizure*

In Count V, Plaintiffs allege that Defendants Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Kapper, and Henderson violated their Fourth Amendment rights when, acting under the color of state law and in the scope of their employment, they instigated a malicious code enforcement action without a jurisdictional basis and unlawfully executed a lien against their property.[3]

<u>Absolute Immunity</u>

Denhardt, the Town attorney, argues that he is entitled to prosecutorial immunity for his role in code enforcement proceedings. The Court agrees. Because Denhardt advised the Town with respect to litigation in which the Town was engaged, he was involved in the code enforcement proceedings, and was engaged in the appellate proceedings, prosecutorial immunity will absolutely shield his actions

---

[2] The current discovery disputes and pending motions for sanctions filed by both parties only reaffirm this conclusion.

[3] This count contains several alternative theories of liability, including that (1) the named Defendants acted under the color of state law and in the scope of their employment to directly violate Plaintiffs' constitutional rights (Doc. 88 at ¶ 243); (2) Holmes, Adams, Kapper, and Henderson had supervisory over Denhardt and were deliberately indifferent as to whether the Town had lawful jurisdiction to prosecute the code enforcement against Plaintiffs, and they are therefore vicariously liable for malicious prosecution (*Id*. at ¶ 244); and (3) Denhardt, Palmer, Andrews, Holmes, Adams, Kapper, and Henderson, who all had supervisory authority over Walker, failed to take remedial action and were deliberately indifferent as to whether Walker's unlawful conduct would violate Plaintiffs' constitutional rights, and they are therefore vicariously liable for his malicious prosecution (*Id*. at ¶ 246).

in initiating prosecution or presenting the Town's case. *See Sullivan v. City of New Port Richey*, No. 85-459-CIV-T-17, 1988 WL 156289, at *16 (M.D. Fla. Sept. 13, 1988). Consequently, Count V is dismissed with prejudice as to Denhardt.

Qualified Immunity

Even if Plaintiffs could state a claim for § 1983 malicious prosecution, they would not be entitled to relief because Defendants Palmer, Andrews, Walker, Holmes, Adams, Kapper, and Henderson are entitled to qualified immunity.

As a threshold, the Court finds that Defendants were acting in the scope of their employment and discretionary authority at the relevant times. In their second amended complaint, Plaintiffs actually allege that that the Defendants were acting in the scope of their employment. *See generally* (Doc. 88 at ¶¶ 113-114; 234-235). Because Defendants were working under the authority of the Town of Redington Shores, and the imposition of a code enforcement lien is within the Town's discretionary authority,[4] Plaintiffs must overcome Defendants' right to claim qualified immunity.[5] *See Cornett v. City of Lakeland*, No. 8:06-cv-2386, 2008 WL 2740328, at *7 (M.D. Fla. July 10, 2008).

---

[4] *See* Fla. Const. art. VIII, § 2(b); § 166.021(1) & (4), *F.S.*; 162.01-162.13, *F.S.*
[5] The Court notes that Plaintiffs attempt to argue that the Defendants were not acting within their discretionary authority because they did not have jurisdiction to pursue the code enforcement action against Plaintiffs. However, in their responses in opposition, Plaintiffs only cite to cases involving out-of-jurisdiction arrests to argue that Defendants were acting outside the scope of their discretionary authority in this case. The Court does not find these cited cases persuasive. The Court also notes that there has been no determination that the Town did not have jurisdiction to enforce the City Code against the Plaintiffs and the Pier.

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation omitted). Consequently, it is important to resolve questions of immunity at the "earliest possible stage in litigation." *Id.* at 231. A qualified immunity defense may be raised in a motion to dismiss and resolved prior to discovery. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019); *Barbee v. Naphcare, Inc.*, 216 F. App'x 851, 853 (11th Cir. 2007). Generally, it is appropriate to dismiss a complaint on qualified immunity grounds "when the complaint fails to allege the violation of a clearly established right." *Corbitt*, 929 F.3d at 1311 (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

As the United States Supreme Court has explained,

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Pearson*, 555 U.S. at 231 (internal quotations and citations omitted). To overcome a qualified immunity defense, a plaintiff must establish (1) the allegations make out a

violation of a constitutional right; and (2) if so, the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Corbitt*, 929 F.3d at 1311. However, courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending upon the unique circumstances in each particular case. *Pearson*, 555 U.S. at 236; *Corbitt*, 929 F.3d at 1311. In fact, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *See Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Corbitt*, 929 F.3d at 1311 (quoting *Anderson*, 483 U.S. at 640). After all, officials are not obligated "to be creative or imaginative in drawing analogies from previously decided cases," and a general "awareness of an abstract right . . . does not equate to knowledge that [an official's] conduct infringes the right." *Id.* at 1311-12 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)). A plaintiff may show that a constitutional right is clearly established by showing: "(1) a 'materially similar case'; (2) pointing to a 'broader clearly established principle' that controls 'the novel facts of the situation;' (3) or demonstrating that the conduct involved in the case 'so obviously violates the constitution that prior case law is unnecessary.'" *Lindbloom v. Manatee County*, No.

8:18-cv-2642-T-02AEP, 2019 WL 2503145, at *10 (M.D. Fla. June 17, 2019) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  *Shuford v. Conway*, 666 F. App'x 811, 816-17 (11th Cir. 2016) (quoting *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

Because the Court is considering the qualified immunity issue at this stage of the proceedings, the Court relies on the well-pleaded facts alleged by Plaintiffs in their second amended complaint.  Accepting Plaintiffs' well-pleaded facts as true, the Court finds that clearly established law does not show that the lien at issue in this case violated the Constitution.

Although Plaintiffs generally allege that the code enforcement lien constituted a violation of their Fourth Amendment rights, Plaintiffs have failed to cite to any specific decision by the United States Supreme Court, Eleventh Circuit Court of Appeals, or Supreme Court of Florida to support this argument.  Instead, Plaintiffs argue – in the abstract – that a lien may constitute an interest that interferes with property rights, citing to *Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992).  However, the facts of *Soldal,* which involved the actual physical seizure of a mobile home and did not address liens, are easily distinguishable.  Plaintiffs also point to decisions concerning whether the imposition of tax liens or the freezing of bank assets establish meaningful interference with a possessory right.  However,

these cases were not decided by the United States Supreme Court, Eleventh Circuit Court of Appeals, or Supreme Court of Florida, and the cases do not demonstrate that the code enforcement lien at issue here constitutes a clear violation of a constitutional right.

Defendants are not required to be creative by drawing analogies from a previously decided case, and awareness of an abstract right does not establish knowledge that the Defendants' imposition of a code enforcement lien infringed on Plaintiffs' Fourth Amendment rights. *See Corbitt*, 929 F.3d at 1311-12. Moreover, the only case that the Court has been able to find that appears to address this issue concluded that a code enforcement inspection and resulting lien did not amount to a Fourth Amendment search and seizure. *See Bey v. City of Tampa Code Enforcement,* No. 8:14-cv-954-T-27AEP, 2014 WL 4629665, at *4 (M.D. Fla. July 25, 2014), *affirmed in part, vacated in part, remanded by Bey v. City of Tampa Code Enforcement*, 607 F. App'x 892 (11th Cir. 2015).

Even accepting all of Plaintiffs' well-pleaded facts as true, the Court concludes that the imposition of a lien based on an allegedly unlawful code enforcement proceeding does not constitute a "clear violation" of the Fourth Amendment. As such, the Court finds that Defendants are entitled to qualified immunity as to Plaintiffs' § 1983 malicious prosecution claim. Count V is therefore dismissed with prejudice as to Defendants Palmer, Andrews, Walker, Holmes, Adams, Kapper, and Henderson.

***Count VII – Equal Protection Clause – Violation of 42 U.S.C. § 1983
Pursuant to the Fourteenth Amendment: Unlawful and Selective Code
Enforcement***

In Count VII, Plaintiffs allege that Defendants Denhardt, Palmer, Andrews, Walker, Holmes, Adams, Kapper, and Henderson violated their Fourteenth Amendment rights through unlawful and selective code enforcement.[6] Plaintiffs proceed under a "class of one" theory and do not specifically identify any comparator. Plaintiffs generally allege that Defendants acted with malice, with the knowledge and intent that they would emotionally and financially injure Plaintiffs, but they provide no specific facts to support this conclusory allegation.

As the Court explained in its prior Order, to sustain an equal protection claim based on a "class of one" theory, a plaintiff must show that the plaintiff was treated differently from similarly situated individuals, and that there is no rational basis for the difference in treatment. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). Under Eleventh Circuit precedent, a plaintiff is required to identify a comparator to demonstrate discriminatory conduct and cannot rely "broad generalities" when doing so. *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1340 (S.D. Fla. 2014)

The Court previously dismissed this claim as facially insufficient but gave Plaintiffs leave to amend to cure identified defects. Here, Plaintiffs have again failed to allege the existence of at least one similarly situated comparator, and they have only generally alleged that the treatment they received was different from that

---

[6] Plaintiffs again, in confusing fashion, lump multiple alternative theories of liability as part of this distinct claim for relief, including direct liability and vicarious liability.

of others similarly situated.[7] As such, the claim again fails to meet the requisite Eleventh Circuit standard for equal protection claims.

In its prior Order, the Court acknowledged an exception to the general comparator requirement used by the Seventh Circuit, which "recognizes class of one claims in cases where illegitimate governmental conduct or animus is easily demonstrated[,] but similarly situated individuals are difficult to find." *Eisenberg*, 1 F. Supp. 3d at 1340 (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)). Although it did not appear that the Eleventh Circuit has addressed this particular issue, the Court was willing to entertain whether Plaintiffs could meet the Seventh Circuit's standard for equal protection claims.

In this case, Plaintiffs have not pleaded "such obviously harassing or malicious conduct on [Defendants'] part so that unequal treatment may be inferred." *See id.* at 1342. In *Eisenberg*, the court held that although the plaintiffs alleged a pattern of pretextual regulation motivated by malice – including numerous code violations – the citations and shutdowns by City officials did not "sufficiently demonstrate an obvious campaign of malicious harassment . . ." *Id.* at 1342. In this case, Plaintiffs make similar allegations of a pattern of pretextual regulation motivated by malice. Here, the Court finds that the malicious acts

---

[7] The Court specifically notes that Plaintiffs do not actually allege that any other persons or entities were in violation of the Town Code but not prosecuted. They only allege generally that they were treated differently than other residents of the Town (Doc. 88 at ¶ 273), and that they were "the only individuals in Town maliciously targeted by the Defendants for years of harassing code enforcement litigation that was not based on the Town's lawful jurisdiction, and moreover, targeted for the execution of an unlawful Lien Order on their property" (*Id.* at ¶ 275).

alleged – including one code enforcement proceeding and alleged interference with contractual and business dealings – do not sufficiently demonstrate obvious harassing or malicious conduct by Defendants. Furthermore, the conduct alleged is not arbitrary or irrational where it had a "conceivable legitimate purpose – to obtain compliance with the City Code and protect the health and safety of the public." *See id.* As a result, the Court finds that Plaintiffs have again failed to sufficiently state a claim for violation of their Fourteenth Amendment rights.

A district court must generally permit a plaintiff at least one opportunity to cure deficiencies before dismissing a claim or complaint with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). "Implicit in such a repleading order is the notion that if the plaintiff fails to comply with the court's order – by filing a repleader with the same deficiency – the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (internal quotations and citation omitted). Because the Court has already given Plaintiffs an opportunity to cure these deficiencies but they have failed to do so, Count VII is dismissed with prejudice.

### *Count IX – Negligent Retention of Walker: Violation of 42 U.S.C. § 1983 Pursuant to the Fourth Amendment*

In Count IX, Plaintiffs allege that Defendant Town of Redington Shores violated their Fourth Amendment rights by negligently retaining Walker, who they allege conducted unlicensed inspections in violation of Chapter 468, *F.S.*, including inspections at the Pier. Although the parties have been litigating this particular

lawsuit since March 20, 2019, this claim was raised, for the first time, in Plaintiffs' second amended complaint, filed on May 12, 2020.

To state a claim under § 1983, a litigant must allege a deprivation of a federal right by a person acting under color of state law. *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005). A municipality or local government is liable for civil rights violations committed by an individual acting "under color of any statute, ordinance, regulation, [or] custom." *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable based on a theory of *respondeat superior*. *Id*. at 691. Instead, a municipality is only liable for injury caused by an employee when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694. To establish liability, these policies and customs must be "so permanent and well settled" so as to have "the force of law." *Id*. at 691. Additionally, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. Of Cty. Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997).

Negligent retention occurs when, "during the course of employment, the employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fail[ed] to take further action such as investigating, discharge, or reassignment." *Groover v. Polk County Bd. Of Cty. Comm'rs,* No. 8:18-cv-2454-T-02TGW, 2020 WL 2307558, at *5 (M.D.

Fla. May 8, 2020) (citing *Degitz v. S. Mgmt. Servs., Inc.*, 996 F. Supp. 1451, 1461 (M.D. Fla. 1998)).  Plaintiffs allege that Redington Shores did not sufficiently investigate or supervise Walker, a Town employee, which allowed him to conduct hundreds of unlicensed building inspections, including the inspection at the Pier that resulted in a code enforcement lien.

Redington Shores first argues that the June 23, 2015, code enforcement hearing before a special master is governed by Chapter 162, *F.S.* rather than Chapter 468, *F.S.*  The text of the statutes appears to support this argument – Chapter 468 addresses building code administration and inspections conducted pursuant to *permits*, while Chapter 162 authorizes the imposition of administrative fines to enforce *codes* and ordinances.  *See* §§ 468.601; 162.02, *F.S.*  Importantly, Chapter 162 does not require a license to conduct code enforcement inspections; it only requires authorization by the local authority.  If true, Plaintiffs would not be able to plausibly state a claim for relief for negligent retention against the Town since they could not sufficiently allege any duty, breach, or causal connection between the conduct and injury.

The Court need not make this determination, however, because even in the context of Chapter 468, the Court finds that Plaintiffs have failed to plausibly state a claim for relief for negligent supervision under § 1983.  "A person injured by a government actor in the course of enforcing the laws for the general protection of the public ordinarily has no claim, because the actor owes no actionable common-law duty of care to the general public." *Vaden v. Campbell,* No. 4:09cv12-RH/WCS,

2009 WL 1919474, at *3 (N.D. Fla. July 2, 2009). Rather, an individual injured by a government actor only has a claim "if the government actor owes the person a special duty of care." *Id.*

Moreover, the injury must be based on an injury resulting from a common-law tort recognized in Florida. *See, e.g.*, *Wheeler v. Blackbear Two, LLC*, No. 6:12-cv-583-Orl-37TBS, 2012 WL 3596128, at *2 (M.D. Fla. Aug. 21, 2012); *Jones v. Spherion Atl. Enter.*, LLC, No. 6:10-cv-833-Orl-31GJK, 2010 WL 11626722, at *4 (M.D. Fla. Sept. 29, 2010); *Gutman v. Quest Diagnostics Clinical Lab., Inc.*, 707 F. Supp. 2d 1327, 1331-32 (S.D. Fla. 2010); *Atmore v. City of Lake Wales*, No. 8:08-cv-2320-T-27EAJ, 2009 WL 10670908, at *3 (M.D. Fla. Dec. 1, 2009); *Hernandez v. Manatee County*, No. 8:05-cv-1434-T-30EAJ, 2006 WL 8440095, at *1 (M.D. Fla. Oct. 23, 2006); *Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *8 (M.D. Fla. May 19, 2006); *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1248 (M.D. Fla. 1999).

Upon review, the Court finds that Plaintiffs have failed to state a § 1983 negligent supervision claim. First, Plaintiffs have failed to sufficiently plead a policy or custom that was the moving force behind a constitutional violation. They do not actually allege that the code enforcement violations, proceedings, or resulting lien were caused by the Town's "custom" of conducting unlicensed inspections or even by Walker's lack of a license. Moreover, as the Court noted in its analysis of Count V, it is not clear whether a code enforcement lien constitutes a seizure under the Fourth Amendment, and the only case the Court is aware of concludes that a

code enforcement lien is not a Fourth Amendment violation.

As to the elements of negligent supervision, Plaintiffs do not allege the existence of a recognized special duty of care. Instead, they only allege the existence of a general duty of care to enforce the licensure requirements of the building code and a duty to ensure that inspectors are properly licensed. A duty of care to the general public cannot support a negligent supervision claim.

Additionally, Plaintiffs have failed to allege that Walker committed a common-law tort against them. Instead, Plaintiffs only appear to allege that Walker violated Florida statutes and/or their Fourth Amendment rights by conducting inspections without the appropriate license. Plaintiffs also do not sufficiently allege that the alleged breach of duty here – the retention of an unlicensed inspector – caused their injury.

Finally, the Court notes that nothing in Chapter 468 demonstrates any legislative intent to give private citizens a right of recovery based on a municipality's negligent inspection of their property. It appears that the licensure requirement is intended to protect the health and safety of the public, not the personal or property interests of private citizens, and the chapter only provides for disciplinary measures against any persons in violation.

Normally, the Court would dismiss this claim without prejudice and permit Plaintiffs the opportunity to amend. However, the Court has already dismissed claims without prejudice, and Plaintiffs have previously failed to correct pleading deficiencies identified by this Court. Therefore, Count IX is dismissed with prejudice. *See PNC Bank, N.A. v. M.D.K. Holdings, LLC,* No. 6:14-cv-598-Orl-41TBS, 2014 WL 12685922,

at *2 (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002)).

***Counts I, II, III, IV, VI, and VIII***

In light of the Court's dismissal with prejudice of the federal claims in Counts V, VII, and IX, and in the interest of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Plaintiffs' claims arising under state law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004); *Martelli v. Knight*, No. 8:19-cv-441-T-02SPF, 2020 WL 3440582, at *8-9 (M.D. Fla. June 23, 2020). Consequently, Counts I, II, III, IV, VI, and VIII are hereby dismissed without prejudice. As to these state law claims, the Court tolls the statute of limitations for sixty days.

***Motions for Sanctions***

Defendants have also filed several motions for sanctions against Plaintiffs, arguing that neither Plaintiffs nor counsel undertook a sufficient pre-suit investigation to discover whether a reasonable factual basis existed for their claims, and that making and maintaining these claims constitutes bad faith. (Docs. 137; 138; 139; 140). Upon review, the Court finds that Plaintiffs' federal claims do not appear frivolous or made in bad faith. The motions for sanctions are therefore denied as to the federal claims. The Court declines to address any sanctions requests related to the state law claims since the Court has determined that it will not exercise supplemental jurisdiction over the state law claims. As a result, the motions for sanctions as to the state law claims are dismissed without prejudice.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Town of Redington Shores' Dispositive Motion to Dismiss Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law" (Doc. 92) is **GRANTED IN PART**. The Court **GRANTS** the motion to the extent that it finds that Plaintiffs have failed to sufficiently allege a § 1983 negligent retention claim in Count IX, and this count is dismissed with prejudice. The Court **DECLINES** to address the other arguments raised by Redington Shores in its motion.

(2) "Defendant James Denhardt's Dispositive Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law" (Doc. 94) is **GRANTED IN PART**. The Court **GRANTS** the motion to the extent that it finds that Defendant James Denhardt is entitled to absolute immunity as to Count V, so this count against him is dismissed with prejudice. The Court also **GRANTS** the motion to the extent that it finds that Plaintiffs have failed to state an equal protection claim in Count VII, so this count is also dismissed with prejudice as to Denhardt. The Court **DECLINES** to address the other arguments raised by Denhardt in his motion.

(3) "Defendants Bertram Adams, Steven Andrews, Marybeth Henderson, Leland Holmes, Thomas Kapper, Mary Palmer, and Joseph Walker's Dispositive Motion to Dismiss the Second Amended Complaint and Motion to Dismiss-Motion for Summary Judgment as to Counts V and VII and Incorporated Memorandum of Law" (Doc. 95) is **GRANTED IN PART**. The Court **GRANTS** the motion to the extent that it finds that Defendants Adams, Andrews, Henderson, Holmes, Kapper, Palmer and Walker are entitled to qualified immunity as to Count V, so this count is dismissed with prejudice as to these Defendants. The Court also **GRANTS** the motion to the extent that it finds that Plaintiffs have failed to state an equal protection claim in Count VII, so this count is dismissed with prejudice as to these Defendants. The Court **DECLINES** to address the other arguments raised by these Defendants in their motions.

(4) Counts V, VII, and IX are hereby **DISMISSED WITH PREJUDICE.**

(5) In light of the Court's dismissal with prejudice of Counts V, VII, and IX, the Court **DECLINES** to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Plaintiffs' claims arising under state law. Consequently, Counts I, II, III, IV, VI, and VIII are hereby

      **DISMISSED WITHOUT PREJUDICE**.  Pursuant to 28 U.S.C. § 1367(d), the period of limitations for Plaintiffs' state law claims shall be tolled for 60 days after dismissal unless state law provides for a longer tolling period.

(6)    Defendants' motions for sanctions (Docs. 137, 138, 139, and 140) are **DENIED** as to the federal law claims.  The Court **DECLINES** to address any requests for sanctions as to the state law claims, so these requests for sanctions are **DISMISSED WITHOUT PREJUDICE**.

(7)    The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

      **DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>23rd</u> day of July, 2020.

*[signature]*

      **TOM BARBER**
      **UNITED STATES DISTRICT JUDGE**